**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| ANGELIA D. MOON, | ) | |
|     Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) |   2:21-CV-193-RWS-JCF |
| v. | ) | |
| | ) | |
| BIG CREEK FOODS, LLC, | ) | JURY TRIAL DEMANDED |
|     Defendant. | ) | |

**PLAINTIFF'S COMPLAINT
FOR EQUITABLE RELIEF AND DAMAGES**

COMES NOW Plaintiff Angelia D. Moon ("Ms. Moon" or "Plaintiff") and files this Complaint against Big Creek Foods, LLC, (hereinafter referred to as "Defendant"), through undersigned counsel, showing the Court as follows:

**INTRODUCTION**

1.

This action is brought by Plaintiff for damages and equitable relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, national origin discrimination, for violations of The Family Medical Leave Act of 1993, 29 U.S.C § 2601, *et. seq.* ("FMLA"), violations of the Fair Labor Standards Act of 1938, ("FLSA"), 29 U.S.C. §201, *et seq.* to recover (1) lost wages, vacation, retirement benefits and healthcare benefits, (2) compensatory damages for physical

and emotional distress; (3) Pre and post judgment interest on her damages, where appropriate, calculated at the prevailing rate; (4) punitive damages where appropriate; (5) her costs of litigation, including her reasonable attorney's fees; (6) unpaid overtime wages; and (7) liquidated damages, where appropriate. Plaintiff also seeks equitable relief, including reinstatement to her employment or front pay in lieu of reinstatement.

## JURISDICTION AND VENUE

2.

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e, 29 U.S.C. § 203, (FLSA) 29 C.F.R. Part 825 (FMLA), 28 U.S.C. §§ 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. §§ 2201 and 2202 (declaratory judgment).

3.

Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant maintains offices conducting regular business in the Northern District of Georgia, Gainesville Division, and the claims arose within the district and division of the Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.

All conditions precedent to this lawsuit within the meaning of Fed. R. Civ. P.

9(c) have been performed or otherwise occurred or have been prevented by the action or inactions of Defendant. Plaintiff timely filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission, ("EEOC") and a "Notice of Right to Sue" was issued by the EEOC. Plaintiff's Charge to the EEOC served to provide notice of the Charge to Defendant and Defendant was afforded the opportunity to participate in the investigation and conciliation of this Charge. This action is filed within ninety (90) days of the Plaintiff's receipt of the "Notice of Right to Sue." Thus, administrative remedies have been exhausted.

## **PARTIES**

5.

Plaintiff, Ms. Moon, is an adult American citizen and resident of Jackson County, Georgia. As such, she is entitled to bring actions of this type and nature. She submits herself to the jurisdiction and venue of this Court.

6.

Plaintiff was an "employee" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

7.

Plaintiff was an eligible employee as defined by Family Medical Leave Act of 1993 ("FMLA") because she was employed by Defendant for at least 12 months and worked more than the requisite 1250 hours.  29 U.S.C. § 2611(2).

8.

Plaintiff was an employee of Defendant, as defined by 29 C.F.R. § 1620.8 Section 3(e), the Fair Labor Standards Act ("FLSA").

9.

Defendant is a private for-profit company, registered with the Georgia Secretary of State, that was at all times relevant to this action licensed to do business in the state of Georgia, engaged in commerce or industry affecting commerce, employing in excess of fifteen (15) employees for each working day in each of the twenty (20) calendar weeks in the current or preceding calendar year and located in the state of Georgia, in this federal district and this division. At relevant times hereto, Defendant has maintained their offices, conducting regular, not isolated, acts of business in Gainesville, Georgia, located in the Northern District of Georgia, Gainesville Division.  As such, Defendant is subject to personal jurisdiction in Georgia.

10.

Defendant is a covered employer as defined by FMLA, 29 U.S.C. 2611(4) as Defendant is engaged in an industry or activity affecting commerce who employs 50 or more employees for each of 20 or more calendar workweeks in the current or preceding calendar year.

11.

Defendant is an employer as defined by 29 C.F.R. § 1620.8 Section 3(d), FLSA and is subject to the law, thus, the requirements placed on employers prescribed by the FLSA.

12.

Defendant Big Creek Foods, LLC may be served with process of service of the Complaint and Summons via its Registered Agent, Eric Hilley, 454 Green Street, Gainesville, Georgia 30501.

13.

At all times relevant to this action, Defendant Big Creek Foods, LLC is located at 2637 White Sulfur Road, Gainesville, Georgia 30501 where Plaintiff reported to work.

## **FACTS**

14.

As above, Ms. Moon was, at all times relevant to this action, an employee of Defendant.

15.

Ms. Moon was employed by Defendant from on or about April 25, 2018, until her termination on or about October 29, 2019.

16.

Ms. Moon was initially employed by the Defendant as an "Unracker," a general labor position that paid Ms. Moon $11.00 per hour.

17.

In accordance with Defendant's policy, the normal probationary period before an employee is given a raise is 90 days.

18.

On or around June 11, 2018, after 47 days, and exceeding the Defendant's expectations, Ms. Moon was awarded a raise to $12.00 per hour.

19.

Due to Ms. Moon's impressive work performance, on or around July 9, 2018, less than one month later, Ms. Moon was promoted to Night Shift as a Lead and paid $15.00 per hour.

20.

On or about November 5, 2018, Ms. Moon was again promoted to Nightshift Supervisor and given a raise to $44,000.00 annually. She had actually been performing the duties required for this position since her transfer to Night Shift.

21.

Plaintiff was promoted to dayshift supervisor but was not given a raise.

22.

Throughout her tenure with Defendant, Ms. Moon has been a hard-working employee who diligently performed her duties on a regular basis.

23.

On or about November 8, 2018, Defendant changed Plaintiff's status to exempt at which time Defendant stopped paying Plaintiff for her hours in excess of 40 in any given workweek.

24.

Plaintiff routinely worked in excess of 40 hours each workweek.

25.

Plaintiff was given a performance review on or about September 8, 2019, just prior to her FMLA leave, by David Greer.  The evaluation was not fully

completed as Nick Sandler had not completed his part of the review. However, Greer stated to Plaintiff that she had progressed "exceptionally well."

26.

On or about September 10, 2019, Ms. Moon went on an FMLA-qualified, Short-Term Disability leave for a medical procedure, more specifically gynecological surgery. She returned to work on or about October 25, 2019.

27.

On August 26, 2019, two weeks before Ms. Moon's FMLA leave began, Ms. Juani Arapacio was hired by the Defendant at $16.00 an hour as an oven operator.

28.

According to information and belief, Arapacio is of Hispanic descent.

29.

Plaintiff was made clearly aware that she was not a superior to Arapacio but in fact, Arapacio reported directly to David Greer or Lia Bryant.

30.

Greer had made numerous comments about the great asset Arapacio would be for the company because of her ability to speak Spanish.

31.

Plaintiff had never had any problem communicating with the mostly Spanish-speaking employees.

32.

David Greer asked Plaintiff to show Juani Arapacio the job of Dayshift Supervisor. Plaintiff stated that she was still training on the job but that she would show Ms. Arapacio anything that she knew and Plaintiff did show Ms. Arapacio what she knew to that point.

33.

On or about September 13, 2019, during her FMLA leave, David Greer, the plant manager, texted Plaintiff to ask for her password to the computer system because he stated that the "IT guy" needed it. At that time Plaintiff's password was changed and she never received a new password.

34.

While she was out on Short-Term Disability, her position was filled by the newly-hired Arapacio.

35.

When Ms. Moon returned to work, Arapacio was still acting as a supervisor, telling Ms. Moon she could not pull workers off the line to help complete a task

given to Ms. Moon by her supervisor, David Greer.  Pulling workers off the line was completely within Ms. Moon's powers as supervisor of the production line.

36.

On Ms. Moon's first day back, Friday, October 25, 2019, Arapacio ran bags for some treats.  Ms. Moon asked Arapacio for the reason why Arapacio was running the bags.  Arapacio stated that she was told by David Greer, plant manager, to run the bags. It turned out these bags had the wrong best buy date on them. Despite Arapacio's error, Ms. Moon was blamed for this failure.

37.

On Monday, October 28, 2019, Arapacio started the production line without getting the morning results of the QA swabs for bacteria. As Mr. Greer and Ms. Moon approached the production line Jessica Savage, the QA tech, informed them of Arapacio's error.

38.

Ms. Moon was held accountable for Arapacio's error.  Arapacio's error loaded the production line with unsafe levels of harmful bacteria.

39.

Arapacio's blunders of having the wrong best buy dates being printed on the bags and the running of the production line with unsafe levels of bacteria were the reasons proffered by Defendant for Ms. Moon's termination.

40.

As a result of Arapacio's offenses, Plaintiff was immediately terminated by Defendant in violation of its own progressive discipline policy.

41.

Plaintiff had never been disciplined, either verbally or in writing, nor was she ever warned that her job was in jeopardy, prior to her termination.

42.

Defendant did not contest Plaintiff's receipt of unemployment benefits presumably because Defendant could not prove Defendant's stated reason for termination was not pretextual.

43.

According to information and belief, Arapacio was offered Plaintiff's position of daytime supervisor during the time Plaintiff was out on FMLA leave.

44.

Despite Plaintiff's FMLA leave status, within 6 short weeks, her position was not preserved as promised and as required by FMLA.

45.

On November 11, 2019, thirteen days after Ms. Moon's termination, Arapacio was given a promotion to Ms. Moon's position, Daytime Supervisor, and a raise to $47,000.00 a year, $3,000.00 more than Plaintiff was earning for the same position.

46.

Shortly after Plaintiff's termination, all employees were called into the breakroom and informed that going forward, Arapacio would be taking Plaintiff's job as dayshift supervisor.

47.

According to information and belief, all employees were required to watch a training video that was in Spanish even though several of the employees did not speak or understand Spanish.

48.

According to information obtained from her personnel file, Arapacio continued to make the same types of transgressions for which Plaintiff was terminated even after Plaintiff's termination.

49.

According to Arapacio's personnel file, on January 13, 2020, she received written discipline for placing the wrong lot number information on bags.

50.

On September 3, 2020, Arapacio was given both a verbal and written warning for four different matters, which included poor handling of managerial tasks and production process inefficiencies on multiple occasions.

## COUNT I

## VIOLATIONS OF THE FAIR LABORS STANDARDS ACT OF 1938

51.

Plaintiff incorporates preceding paragraphs 1 through 3 and 5 through 50 as if stated herein for this claim for relief.

52.

Plaintiff was regularly compelled and scheduled to work more than forty hours per week.

53.

Defendant misclassified Plaintiff as exempt.

54.

Defendant failed to pay Plaintiff anything for her hours worked in excess of 40 hours per week.

55.

Although Plaintiff's title with Defendant contained the word "supervisor," Plaintiff performed mostly manual labor.

56.

Plaintiff's duties did not satisfy the requirements of any exempt category in accordance with the FLSA.

57.

At all times relevant to this action, Defendant was subject to the responsibilities prescribed by the FLSA as ascribed to employers.

58.

Defendant's unlawful acts, omissions, and practices concerning the terms, conditions, and provisions of Plaintiff's employment violate the FLSA.

59.

As a result of Defendant's unlawful acts, omissions, and practices, Plaintiff suffered a loss of wages.

60.

Defendant's willful violation of the FLSA shows reckless disregard of Plaintiff's right to receive appropriate overtime compensation for her work with Defendant.

61.

Defendant owes Plaintiff pay for work performed but not compensated in an amount to be determined, plus liquidated damages in an equal amount, pursuant to 29 U.S.C. § 216(b).

62.

Pursuant to Section 216(b) of the FLSA, Defendant owes Plaintiff for reasonable attorney's fees.

**COUNT II**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, NATIONAL ORIGIN DISCRIMINATION**

63.

Plaintiff re-alleges paragraphs 1 through 61 as if fully set forth herein and further alleges

64.

Plaintiff is a member of a protected group (Caucasian, non-Hispanic, American).

65.

Plaintiff was employed by Defendant.

66.

Plaintiff was qualified for the position she held.

67.

Plaintiff was subjected to disparate treatment based on her national origin.

68.

Plaintiff, who is a Caucasian, non-Hispanic, American woman, worked in a department made up primarily of Hispanic workers.

69.

Arapacio, who is of Hispanic descent, was similarly-situated to Plaintiff, in all material aspects of her job.

70.

Defendant treated Plaintiff's similarly-situated, Hispanic peer more favorably than her.

71.

When she assumed the supervisor position, Arapacio continued to make the same type of errors for which Ms. Moon was terminated.

72.

Defendant did not use its own policy of progressive discipline when it terminated Plaintiff for Arapacio's offenses.

73.

Defendant eventually used its progressive discipline policy with regard to the continual errors made by Arapacio, after Plaintiff's termination.

74.

Defendants' discriminatory treatment against Ms. Moon was done in part because of national origin.

75.

Defendants' actions/inactions were in violation of 42 U.S.C. § 2000e et seq.

76.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff in violation of her federally protected rights.

77.

Defendant's actions were reckless and taken in willful disregard of the probable consequences of its actions.

78.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury.

79.

As a result of Defendant's unlawful conduct, Defendant was the direct and proximate cause of Plaintiff's damages.

80.

Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury.  Plaintiff has also suffered lost wages and the benefits of employment, which she seeks to recover from Defendant.

## COUNT III

## VIOLATIONS OF FMLA OF 1993, 29 U.S.C. § 2601, AS AMENDED

## 29 U.S.C. §2619, AS AMENDED FAILURE TO PROVIDE NOTICE

### 81.

Plaintiff incorporates preceding paragraphs 1 through 3, 5 through 50 and 65 as if stated herein for this claim for relief.

### 82.

There is no specific method by which Plaintiff must satisfy her responsibility to notify her employer that she has an FMLA-qualifying serious health condition and verbal notification is sufficient as long as the words used convey enough information to place the employer on notice that an FMLA-qualifying event has occurred.

### 83.

Plaintiff, in the instant case, verbally informed Defendant of her FMLA-qualifying event.  Defendant clearly understood that Plaintiff needed surgery.

### 84.

In addition to verbal notice, Plaintiff completed her short-term disability/FMLA paperwork and tendered it to David Skinner, Human Resources for Defendant.

85.

Defendant understood that an FMLA event had occurred and that knowledge triggered Defendant's obligation to notify Plaintiff in writing, providing detailed specific obligations and expectations for the Plaintiff, and explaining any consequences of a failure to meet her obligations in accordance with 29 C.F.R. § 825.200(c)(a).

86.

Plaintiff complied with all conditions precedent to request leave under FMLA, including, but not limited to, providing timely notice of leave, pursuant to 29 U.S.C. § 2613.

87.

Defendant failed to provide any written notice to Plaintiff.

88.

Defendant failed to give Plaintiff a verbal, detailed explanation of her FMLA rights and responsibilities.

89.

David Skinner of Human Resources did tell Plaintiff that her job was secure.

90.

One day prior to Plaintiff's surgery, David Greer, the plant manager, called Plaintiff into his office to tell Plaintiff that her job was secure while she was having surgery and that all she should worry about was getting well.

91.

Plaintiff suffered the adverse employment action of termination of which Plaintiff's use of FMLA leave was a contributing factor.

92.

Plaintiff is entitled to seek damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her by reason of violation of FMLA by Defendant. 29 U.S.C. § 2617.

93.

Plaintiff is entitled to reinstatement of her employment and benefits as a Dayshift Manager caused by Defendant's unlawful actions. 29 U.S.C. § 2614.

94.

Plaintiff is entitled to an award of interest on the amount of her wages, salary and benefits calculated at the prevailing rate. 29 U.S.C. § 2617.

95.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action. 29 U.S.C. § 2617.

## **COUNT IV**

## **FMLA INTERFERENCE IN VIOLATION OF 29 U.S.C.§ 2615 (a)(1)**

96.

Plaintiff incorporates preceding paragraphs 1 through 3, 5 through 50, and 81 through 95 as if stated herein for this claim for relief.

97.

In accordance with 29 U.S.C. § 2612 (a)(1)(D), an FMLA-eligible employee is entitled to 12 workweeks of leave during any 12-month period for a serious health condition that makes the employee unable to perform the functions of the position of such employee.

98.

At all times relevant to this action, Plaintiff was an FMLA-eligible employee of Defendant.

99.

In accordance with 29 U.S.C. § 2615 (a)(1), it is unlawful to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this chapter.

100.

Use of FMLA rights was a motivating factor in the adverse employment action of termination suffered by Plaintiff.

101.

At the time of her termination, Plaintiff was still eligible for approximately 6 weeks of FMLA leave. Plaintiff would have used this time to complete the follow up appointments to her surgery.

102.

Defendant interfered with Plaintiff's use of her FMLA leave when Defendant terminated Plaintiff.

103.

As a result of Defendant's interference in Plaintiff's FMLA rights, Plaintiff suffered economic loss, loss of the benefits of employment, embarrassment, and humiliation.

104.

Plaintiff is entitled to seek damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her by reason of violation of FMLA by Defendant. 29 U.S.C. § 2617.

105.

Plaintiff is entitled to reinstatement of her employment and benefits as a Dayshift Manager caused by Defendant's unlawful actions. 29 U.S.C. § 2614.

106.

Plaintiff is entitled to an award of interest on the amount of her wages, salary and benefits calculated at the prevailing rate. 29 U.S.C. § 2617.

107.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action. 29 U.S.C. § 2617.

## COUNT V

## RETALIATION UNDER FMLA
## A VIOLATION OF 29 U.S.C. § 2615(a)(1) and (2)

108.

Plaintiff incorporates preceding paragraphs 1 through 3, 5 through 50, and 81 through 107 as if stated herein for this claim for relief.

109.

Plaintiff was told by her superiors that her job was safe but it was not. According to information and belief, Plaintiff's job was offered to Arapacio within weeks of Plaintiff's surgery and while Plaintiff was out on her FMLA leave.

110.

Plaintiff returned from FMLA-qualifying leave on or about Friday, October 25, 2019.

111.

Plaintiff was terminated on or about Tuesday, October 29, 2019, just four days after returning from her FMLA-qualifying leave.

112.

Plaintiff's FMLA leave was a motivating factor in the adverse employment action she suffered, termination.

113.

Plaintiff is entitled to seek damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to her by reason of violation of FMLA by Defendant. 29 U.S.C. § 2617.

114.

Plaintiff is entitled to reinstatement of her employment and benefits as a Dayshift Manager caused by Defendant's unlawful actions. 29 U.S.C. § 2614.

115.

Plaintiff is entitled to an award of interest on the amount of her wages, salary and benefits calculated at the prevailing rate. 29 U.S.C. § 2617.

116.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action. 29 U.S.C. § 2617.

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

(a)     Issue a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein violated Ms. Moon's rights as secured under Title VII of the Civil Rights Act of 1964, as amended;

(b)     Grant to Ms. Moon judgment in her favor and against Defendant under all counts of this Complaint;

(c)     Order Defendant to make Ms. Moon whole by providing for her out-of-pocket losses as well as back pay, wages, salary, employment benefits or other

compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon at a rate allowed by law, all in an amount to be proven at trial;

(d)     Order that Ms. Moon be reinstated with seniority or, in the alternative, be awarded front pay;

(e)     Award Plaintiff pre-judgment interest;

(f)     Award Plaintiff compensatory damages in an amount to be determined in the enlightened conscience of the jury to compensate Plaintiff for the mental and emotional damages suffered as a result of Defendant's discriminatory conduct;

(g)     Award Plaintiff punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury to punish for Defendant for its willful and intentional violations of Plaintiff's federal rights and to deter such conduct in the future;

(h)     Award Ms. Moon nominal damages;

(i)     Award Plaintiff her costs and expenses, including reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action as provided by 42 U.S.C. § §1988 and -2000e;

(j)     Award Plaintiff her unpaid wages;

(k)     Award Plaintiff liquidated damages where appropriate;

(l)     Pursuant to the Seventh Amendment of the United States Constitution

and Rule 38, Fed. R. Civ. P., TRIAL BY JURY on all claims on which a jury is

available

(m)     Instruct Clerk to issue summons; and

(n)     Award such additional monetary and equitable relief as the Court

deems proper and just.

Respectfully submitted, this 31st day of August 2021.

/s/ Beverly A. Lucas
Georgia Bar No.:  427692
LUCAS & LEON, LLC
P.O. Box 752
Clarkesville, Georgia 30523
T: (706) 752-2001
F: (706) 752-8085
beverly@lucasandleon.com

Attorney for Angelia D. Moon

## <u>CERTIFICATE OF FONT COMPLIANCE</u>

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

<u>/s/ Beverly A. Lucas</u>
Beverly A. Lucas
Georgia Bar No. 427692